STATE OF CONNECTICUT *v.* PAUL GRUVER
(9763)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued October 28, 1991—decision released April 14, 1992

*William Domnarski,* for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *Donald B. Caldwell,* state's attorney, and *Sandra Tullius,* deputy assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from the judgment of conviction of operation of a motor vehicle while under the influence of liquor in violation of General Statutes § 14-227a. He entered a conditional nolo contendere plea after denial of his motion to suppress the state's evidence. General Statutes § 54-94a.[1] On appeal, the defendant contends that the trial court improperly denied his motion to suppress. We affirm the trial court's judgment.

The record discloses that, on the night in question, JoAnne Howell, while working at a convenience store in the Storrs section of Mansfield, saw the defendant drive into the parking lot in front of the store at approximately 11:30 p.m. She observed the defendant stumble as he got out of his car, enter the store with difficulty and continue to stumble and nearly fall to the floor. On the basis of his glassy eyes, stumbling gait,

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

inability to distinguish currency denominations while attempting to make a purchase and his acknowledgement that he was "trashed," Howell concluded that the defendant was inebriated. Howell asked the defendant whether he would be driving, and when he responded that he would be, she telephoned the police.

Howell informed the police that the defendant had just stumbled out of the store and into the driver's seat of a small blue car parked almost directly in front of the store. She also told the police that the vehicle's lights were on but that its engine had not been started. Howell remained on the phone with the police until a cruiser arrived on the scene less than three minutes later.

The arresting officer was dispatched to the store to look for a possibly intoxicated driver who had just left the store and was in a small blue car with its headlights on. Approaching the store, the officer observed a small blue vehicle with its lights on parked facing the store. The officer stopped his cruiser directly behind the car and turned on the cruiser's overhead light.[2] The record does not indicate that there was any impediment to driving the defendant's car forward.

As the officer walked toward the defendant's car, he smelled a very strong odor of alcohol through the open window and observed the defendant in the driver's seat, with his face flushed and eyes glassy. At this point, the defendant looked at the officer, turned on his vehicle's ignition and, when asked if he had been drinking, replied in slurred speech, "I had a couple." After being asked to exit his vehicle, the defendant failed field sobriety tests, and was arrested for operating a motor vehicle while under the influence of liquor. Neither the

---

[2] The record refers to this light only as a clear light which lit up the vehicle ahead of it. There is no indication that it was a flashing red or blue light. It appears to have been something in the nature of a spotlight.

defendant's operation[3] of the vehicle nor his having been under the influence of liquor are contested in this appeal.

As a threshold matter, we note with disapproval the breadth of the defendant's motion.[4] Much greater particularity of the material to be suppressed is desirable if not required. See General Statutes § 54-33f;[5] Practice Book § 821;[6] *State* v. *Criscuolo,* 6 Conn. Cir. Ct. 453, 275 A.2d 613 (1970). General Statutes § 54-33f is

---

[3] For purposes of General Statutes § 14-227a, it is not necessary that the defendant move the vehicle if he manipulates any of the machinery that could cause the vehicle to move. *State* v. *Ducatt,* 22 Conn. App. 88, 93, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990).

[4] The defendant moved to suppress *"all of the state's evidence"* (emphasis added) on the grounds that it was obtained in violation of his rights under the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution. The defendant, however, makes no effort to show that *all of the state's evidence* was obtained unconstitutionally. For example, the defendant fails to demonstrate how Howell's eyewitness testimony, which was limited to her personal observations, violated the defendant's constitutional rights. Similarly, the defendant offers no explanation of how state's exhibit A (Howell's statement) and exhibit B (a dispatch card) were obtained unconstitutionally. He stipulated to the admission of exhibit A and expressly did not object to the admission of exhibit B. Such action implicitly signified his correct conclusion that neither the dispatch card nor Howell's statement was obtained or admitted in violation of his constitutional rights.

[5] General Statutes § 54-33f (a) provides: "A person aggrieved by search and seizure may move the court which has jurisdiction of his case or, if such jurisdiction has not yet been invoked, then the court which issued the warrant, or the court in which his case is pending, for the return of the property and to suppress for use as evidence anything so obtained on the ground that: (1) The property was seized without a warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. In no case may the judge who signed the warrant preside at the hearing on the motion."

[6] Practice Book § 821 provides: "Upon motion of the defendant, the judicial authority shall suppress potential testimony or other evidence if he finds that suppression is required under the constitution or laws of the United States or the state of Connecticut."

nearly a verbatim adoption of rule 41 (e) of the Federal Rules of Criminal Procedure. As such, we may look to the decisions of the federal courts for assistance in its application. *State* v. *Darwin,* 29 Conn. Sup. 423, 425, 290 A.2d 593 (1972). "It is well settled that a party moving for suppression of evidence must state definitely what particular messages he desires suppressed. An allegation to suppress all illegally obtained evidence is insufficient." *United States* v. *Carney,* 188 F. Sup. 86, 88 (S.D.N.Y. 1960); see also *O'Neal* v. *United States,* 222 F.2d 411 ( D.C. Cir. 1955). Because the adequacy of the motion was not raised by the parties, nor by this court at oral argument, we forego determining the appeal on this issue and will decide the matter on its merits. See *Lo Sacco* v. *Young,* 210 Conn. 503, 508, 555 A.2d 986 (1989).

The defendant treats this case as one involving an anonymous informant. The trial court, however, was entitled to believe Howell's testimony that she gave her name to the police and therefore was not an anonymous tipster. Moreover, Howell testified as a state's witness and was cross-examined by the defendant. Thus, the disadvantages to a defendant when the police act on an anonymous tip or refuse to disclose their informant's name are not part of this case. Such disadvantages arise from the fact that the unknown informant does not come forth and testify as a witness. Thus, the defendant is deprived of his right of cross-examination and the trier of fact is deprived of the opportunity to determine the informant's credibility by observing his demeanor on the witness stand. In this case, the court, as the trier of fact, could determine Howell's credibility for itself. See *State* v. *Richardson,* 204 Conn. 654, 657–62, 529 A.2d 1236 (1987).

The defendant also mistakenly fixes the point when he was seized as the moment the police officer pulled

up behind the defendant's vehicle and turned on the cruiser's light. In *California* v. *Hodari D.,*      U.S.     , 111 S. Ct. 1547, 1550, 113 L. Ed. 2d 690 (1991), the United States Supreme Court recently held that, for fourth amendment purposes, a seizure does not take place until the defendant *has submitted* to a police officer's show of authority. Id., 1551. A naked show of authority without submission thereto does not constitute a seizure. For example, when a police officer, intent on stopping a motorist, turns on the flashing red and blue lights of his marked police cruiser and activates its siren, he has made a display of his authority. If, however, the offending motorist attempts to evade the officer by increasing his speed and a chase ensues, it cannot be said that a seizure has taken place while the chase is in progress. In this hypothetical scenario, a seizure does not occur until the pursued motorist pulls to the side of the road and stops in submission to the pursuing officer's authority.

Applying the *Hodari D.* principle to the present case, we conclude that the defendant incorrectly asserts that a seizure occurred when the officer parked behind the defendant's car. The earliest point at which it can be said that there was submission to the officer's display of authority was when the defendant turned on his ignition as if to leave but instead remained immobile. By this time, the officer had already smelled the odor of alcohol and had observed the defendant's glassy eyes and flushed face. Thus, at a minimum, the officer had reasonable and articulable suspicion that a violation of General Statutes § 14-227a was taking place in his presence.

This court's review of the underlying factual basis of the trial court's decision is limited to whether the court's decision is supported by the evidence or is clearly erroneous. *State* v. *Anderson,* 24 Conn. App. 438, 589 A.2d 372, cert. denied, 219 Conn. 903, 593

A.2d 130 (1991). "The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activity is a question of fact for the trial court and is subject to limited appellate review." Id., 442. The facts detailed above justified the defendant's detention for the limited intrusion of field sobriety testing to confirm or dispel the officer's suspicion. This was a valid *Terry* stop as defined in *Terry* v. *Ohio,* 392 U.S. 1, 20–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968);[7] *State* v. *Lamme,* 216 Conn. 172, 176, 579 A.2d 484 (1990); see *State* v. *Anderson,* supra.

Furthermore, when the defendant, who clearly appeared to be under the influence of liquor, turned on his vehicle's ignition he committed an offense in the presence of the officer.[8] General Statutes § 54-1f (a) authorizes an officer to arrest or detain, without a warrant, any person who commits a crime in his presence.[9]

The trial court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] In *Terry* v. *Ohio,* 329 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the court stated that, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rationale inferences from those facts, reasonably warrant that intrusion."

[8] See footnote 3, supra.

[9] General Statutes § 54-1f (a) provides in pertinent part: "Peace officers . . . shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others . . . ."